# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 5, 2012 Session

## IN RE: AYDEN K.M.

**Appeal from the Juvenile Court for Blount County**
**No. 20041      William Terry Denton, Judge**

**No. E2010-01884-COA-R9-JV-FILED-APRIL 17, 2012**

This appeal concerns a dispute over parentage. Kelly Marie MacCord ("Petitioner") filed suit against Jon Kyle McMillan ("Respondent") in the Juvenile Court for Blount County ("the Juvenile Court"), seeking to overturn Respondent's designation as the father of the minor child Ayden K.M. ("the Child") and also seeking custody of the Child. The Juvenile Court held that Petitioner did not have standing to deny that Respondent was the Child's father, noting that Petitioner had signed a sworn Acknowledgment of Paternity ("AOP") in Texas that recognized Respondent as the father of the Child. Subsequently, Petitioner went to Texas and successfully challenged the AOP in a Texas trial court ("the Texas Court"). Respondent filed a writ of mandamus with the Court of Appeals of Texas, which held that the Texas Court did have subject matter jurisdiction. Petitioner returned to Tennessee seeking to enforce the Texas judgment. The Juvenile Court declined to give full faith and credit to the Texas judgment, holding that the Texas Court lacked jurisdiction. Petitioner appeals. We hold that the Texas Court did have the appropriate jurisdiction and, therefore, the Texas judgment is entitled to full faith and credit. We reverse the judgment of the Juvenile Court.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission; Judgment of the Juvenile Court Reversed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Joseph A. Fanduzz, Knoxville, Tennessee, for the appellant, Kelly Marie MacCord.

Steve Merritt and Cynthia C. Blair, Maryville, Tennessee, for the appellee, Jon Kyle McMillan.

## OPINION

## Background

Petitioner gave birth to the Child in Texas in 2006. Following the birth of the Child, Petitioner and Respondent signed the AOP which identified Respondent as the father of the Child. The Child has lived with Respondent in Tennessee since shortly after the Child's birth. At some point, Petitioner moved from Texas to Idaho.

In September 2007, Petitioner filed suit against Respondent in the Juvenile Court seeking to overturn Respondent's designation as the father of the Child and also seeking custody of the Child. In November 2007, the Juvenile Court ruled that Petitioner did not have standing to deny that Respondent was the Child's father, pointing out that Petitioner had signed the AOP under oath.

Faced with the Juvenile Court's decision, Petitioner then went to Texas where the AOP had been signed. In November 2008, the Texas Court set aside the AOP identifying Respondent as the father of the Child. Petitioner moved the Texas Court to amend its order. In February 2009, the Texas Court entered another order, this time making the additional finding that Respondent was "excluded" from being the father of the Child, and, declaring that the court had jurisdiction under Chapter 160 of Texas Family Code, the Uniform Parentage Act.

Respondent filed a petition for writ of mandamus with the Court of Appeals of Texas, challenging the subject matter jurisdiction of the Texas Court. The Court of Appeals of Texas, in the case of *In re McMillan*, 265 S.W.3d 918 (Tex. App. Austin 2008), held that the Texas Court had jurisdiction to hear the case.

Petitioner then returned to Tennessee to attempt to enforce the Texas judgment. The Juvenile Court, however, declined to give the Texas judgment full faith and credit, stating in its September 2009 order that the Texas Court lacked personal jurisdiction[1] under the Uniform Child Custody Jurisdiction Act to enter a ruling regarding the paternity of Respondent. The Juvenile Court granted Petitioner permission to file an interlocutory appeal. Petitioner appeals.[2]

_____

[1]It is apparent to us that the Juvenile Court meant subject matter jurisdiction rather than personal jurisdiction.

[2]It appears that this appeal was intended to be an interlocutory appeal pursuant to Rule 9 of the
(continued...)

## Discussion

We restate the issues that Petitioner raises on appeal as one overarching issue: whether the Juvenile Court erred in declining to give full faith and credit to the Texas judgment.

We have previously discussed when foreign judgments are entitled to full faith and credit:

Foreign judgments are ordinarily entitled to full faith and credit in Tennessee's courts. However, Tenn. Code Ann. § 26–6–104(c) states that they are subject to the same defenses and may be vacated or reopened on the same grounds and procedures used to vacate or reopen Tennessee judgments. Thus, the grounds and procedures for vacating or reopening foreign judgments are those contained in Tenn. R. Civ. P. 60.02.

Tenn. R. Civ. P. 60.02(3) states that a final judgment may be set aside if it is void. Therefore, not surprisingly, the two most common circumstances when courts will refuse to give full faith and credit to a foreign judgment are when the court entering the foreign judgment had no personal or subject matter jurisdiction, *Topham v. L.L.B. Corp.*, 493 S.W.2d 461, 462 (Tenn. 1973); *Benham v. Fisher*, 650 S.W.2d 759, 760 (Tenn. Ct. App. 1983), and when enforcing the judgment would be contrary to Tennessee's public policy. *In re Riggs*, 612 S.W.2d 461, 465 (Tenn. Ct. App. 1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981).

Parties seeking to undermine the validity of a foreign judgment have a "stern and heavy" burden. *Dement v. Kitts*, 777 S.W.2d 33, 36 (Tenn. Ct. App. 1989). If they are seeking to challenge the foreign court's jurisdiction, they must demonstrate that the foreign court did not acquire jurisdiction under the law of the state where the judgment was obtained. *Four Seasons Gardening & Landscaping, Inc. v. Crouch*, 688 S.W.2d 439, 442 (Tenn. Ct. App. 1984).

_____

[2](...continued)
Tennessee Rules of Appellate Procedure. However, no one filed a Rule 9 petition, and we, therefore, never granted permission for an interlocutory appeal in this case. Furthermore, the record does not contain a final order from which to appeal. Neither party raised this issue. Nevertheless, we observe that this appeal concerns the parentage of a minor child, and we are unwilling to allow technical defects to delay resolution of this matter any further. Pursuant to Rule 2 of the Tennessee Rules of Appellate Procedure, we suspend the rules regarding the filing of a Rule 9 petition. We grant permission for this interlocutory appeal.

*Biogen Distribs., Inc. v. Tanner*, 842 S.W.2d 253, 256 (Tenn. Ct. App. 1992).

In the case now before us, the Juvenile Court, as we interpret its September 2009 order, held that the Texas Court lacked subject matter jurisdiction and, therefore, declined to afford full faith and credit to the Texas judgment. However, in rendering its opinion in response to a writ of mandamus filed by Respondent, the Court of Appeals of Texas reached a very different conclusion as to Petitioner's "AOP challenge...":

MacCord agrees with McMillan that Tennessee has exclusive, continuing jurisdiction over the custody proceeding under the UCCJEA. However, MacCord's suit is not a custody proceeding, but a suit brought to challenge an AOP, and is therefore subject to the Uniform Parentage Act, *see id*. §§ 160.001–160.763 (West 2002 & Supp.2008), rather than the UCCJEA. The UCCJEA applies to paternity actions only to the extent that such actions are included in "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." *Id*. § 152.102(4) (West 2002). MacCord's petition in Texas court does not raise custody or visitation issues, but specifically states, "Petitioner asserts jurisdiction in this Court to challenge the acknowledgment of paternity which is a paternity determination under Texas Family Code Chapter 160. Subject matter jurisdiction over conservatorship orders regarding the child is not asserted." As a result, the UCCJEA is inapplicable to the present case.

\* \* \*

The language of the temporary order in Tennessee, which states that MacCord "does not have standing to deny that [McMillan] is the father of the child having signed under penalty of perjury an acknowledgment of paternity in Texas," suggests that the Tennessee court refused to exercise jurisdiction over the paternity portion of the proceedings, deferring instead to Texas to resolve any challenge to the AOP. This is consistent with the order's statement that the suit "shall proceed before the Court as a custody case." While we do not have a record of the proceeding in Tennessee, MacCord's counsel represented in the hearing on McMillan's plea to the jurisdiction that "the judge of the juvenile court in Blount County acknowledged that she could not set aside the AOP because the AOP had to be set aside in court—by a court in the State of Texas."

The AOP was signed in Texas, filed with the Texas Vital Statistics Unit, and bears the heading, "State of Texas Acknowledgment of Paternity."

MacCord now seeks to challenge the AOP under Texas Family Code section 160.308, which states that "a signatory of an acknowledgment of paternity ... may commence a proceeding to challenge the acknowledgment." *Id*. § 160.308. MacCord also seeks deletion of the acknowledgment from the records of the Texas Vital Statistics Unit, pursuant to section 160.309(e). Furthermore, it appears that the Tennessee court has declined to assert jurisdiction over the parentage action involving A.M., so that as a practical matter, if Texas cannot exercise jurisdiction over the AOP, MacCord will be deprived of the opportunity to challenge it as authorized by section 160.308 of the family code. In light of these circumstances, we hold that Texas has subject-matter jurisdiction over the AOP challenge in this case. As a result, the petition for writ of mandamus is denied.

*In re McMillan*, 265 S.W.3d at 919-21.

We afford substantial deference to the legal interpretation of the courts of the state of the foreign judgment at issue, especially when it involves statutes of that state as it does here with the Uniform Parentage Act of Texas statutes. This issue raised and relied upon by Respondent in this Tennessee case was decided both in the Texas Court and in the Court of Appeals of Texas opinion *In re McMillan*. Respondent and Petitioner litigated this very issue of subject matter jurisdiction in the Texas Court and in the Court of Appeals of Texas.

It is difficult for us to accept Respondent's argument that the Texas Court lacked the requisite jurisdiction when we have a logical and well-reasoned opinion from a Texas appellate court holding that the Texas Court did have jurisdiction over Petitioner's AOP challenge. Respondent is, in effect, asking this Court to refuse to give full faith and credit not only to the Trial Court's judgment but also to the decision of the Court of Appeals of Texas. We decline to do so, and we adopt the sound reasoning of the Court of Appeals of Texas contained in its reported opinion. Given our federal system, relations between the various states demand a certain level of comity and respect in the course of their dealings. Our law is such that a heavy burden awaits the party who wishes to prevent the enforcement of a judgment from a sister state.

Respondent argues that, should we enforce the Texas judgment, the Child will be left without a legal father, and this would violate Tennessee's preference that children have two parents rather than one. Respondent cites the following statutory language to this effect: "[M]ost children do best when they receive the emotional and financial support of both parents." Tenn. Code Ann. § 36-6-401 (b) (2010). However, the language Respondent cites reflects a general preference rather than a categorical and fixed rule.

While we are not unmindful of the consequences of our decision, we find no basis, either in the U.S. Constitution, Tennessee public policy, or elsewhere, to refuse to afford full faith and credit to the Texas judgment. It is our conclusion that Respondent failed to meet his heavy burden required to prevent enforcement of the Texas Court judgment, and the Juvenile Court erred in declining to afford full faith and credit to the Texas Court judgment. We reverse the judgment of the Juvenile Court.

## **Conclusion**

The judgment of the Juvenile Court is reversed, and this cause is remanded to the Juvenile Court for proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee, Jon Kyle McMillan.

_____
D. MICHAEL SWINEY, JUDGE